UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

MARYLAND CASUALTY COMPANY and
ASSURANCE COMPANY OF AMERICA,

    Plaintiffs,

v.

TRANSPORTATION INSURANCE
COMPANY; et al.,

    Defendants.

2:08-CV-1040-LRH-LRL

ORDER

Before the court is defendants' motion for summary judgment filed on November 30, 2009. Doc. #40.[1] Plaintiffs filed a response (Doc. #44) to which defendants replied (Doc. #45).

Also before the court is plaintiffs' cross-motion for summary judgment filed on November 30, 2009. Doc. #41.

**I.    Facts and Background**

The present action concerns various insurance policies involved in an underlying settled construction defect action: *Admiral's Point II Owner's Association, et al. v. Wildcrest Development, Inc., et al.*, Clark County District Court, no. A432011 ("the Admiral's Point litigation").

---

[1] Refers to the court's docket number.

Non-parties Windcrest Development, Inc. ("Windcrest") and KMS Development, Inc. ("KMS") developed the Admiral's Point housing project in Las Vegas, Nevada. Windcrest and KMS had primary insurance policies through Maryland Casualty Company and Assurance Company of America ("collectively plaintiffs"). Windcrest, the general contractor, subcontracted certain construction work to three separate entities, non-parties Century Roofing, Inc. ("Century Roofing"), Vegas General Construction, Inc. ("VGC"), and Imperial Iron, Inc. ("Imperial Iron"). The subcontract agreements required the subcontractors add Windcrest and KMS as additional insureds to their individual insurance policies.

Windcrest and KMS were subsequently sued for construction defects in the Admiral's Point project. Plaintiffs defended Windcrest and KMS and sent notice of the action to defendant insurers. Defendants agreed to defend under a reservation of rights.

Ultimately, the Admiral's Point litigation settled. Plaintiffs covered the settlement and sought contribution from defendants. Defendants declined contending that the additional insured provisions provided only excess coverage to Windcrest and KMS, and that because plaintiffs' policies had not been exhausted, plaintiffs were not entitled to contribution.

Subsequently, plaintiffs filed a complaint against defendants alleging four causes of action: (1) declaratory relief; (2) contribution; (3) indemnity; and (4) breach of contract. Doc. #1, Exhibit 1. Thereafter, both parties moved for summary judgment. Doc. ##40, 41.

**II.    Legal Standard**

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In assessing a motion for summary judgment, the evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475

2

U.S. 574, 587 (1986); *County of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001).

The moving party bears the burden of informing the court of the basis for its motion, along with evidence showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On those issues for which it bears the burden of proof, the moving party must make a showing that is "sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986); *see also Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1141 (C.D. Cal. 2001).

To successfully rebut a motion for summary judgment, the non-moving party must point to facts supported by the record which demonstrate a genuine issue of material fact. *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736 (9th Cir. 2000). A "material fact" is a fact "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983). A dispute regarding a material fact is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to establish a genuine dispute; there must be evidence on which the jury could reasonably find for the plaintiff. *See id.* at 252.

Where, as here, parties filed cross-motions for summary judgment on the same claims before the court, the court must consider each party's motion separately and on its own merits. *Fair Hous. Council of Riverside County, Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (citations omitted). Accordingly, "the court must consider the appropriate evidentiary material identified and submitted in support of both motions, and opposition to both motions, before ruling on each of them." *Id.* at 1134.

\\\

### III. Defendants' Motion for Summary Judgment

An insurance policy provides either primary or excess coverage. A primary insurer's duty to defend arises upon notice of a demand against the insured. *See e.g., Allstate Ins. Co. v. Miller*, 212 P.3d 318, 324 (Nev. 2009). In contrast, an excess insurer's duty to defend arises at the time the primary insurer's policy limits have been exhausted. *See State Farm Mut. Auto. Ins. Co. v. Cramer*, 857 P.2d 751 (Nev. 1993).

Here, it is undisputed that the plaintiffs' policy limits were not exhausted by the Admiral's Point settlement. Thus, defendants' duty to defend, and thereby contribute to the settlement, arose only if the defendants' additional insured provisions provided primary coverage to Windcrest and KMS. Defendants thereby move this court for an order that the additional insured provisions in the subcontractors' insurance policies were excess to plaintiffs' insurance policies.

### A. Century Roofing and VGC

As part of the subcontract agreements, Century Roofing and VGC obtained additional insured endorsements for Windcrest and KMS through their primary insurers, defendants Valley Forge Insurance Company ("Valley Forge") and Transcontinental Insurance Company ("Transcontinental"). The endorsement provided:

> WHO IS AN INSURED (Section II) is amended to include as an insured any person or organization (called additional insured) whom you are required to add as an additional insured on this policy under . . . [a] written contract or agreement.
> . . .
> The insurance provided to the additional insured is limited as follows:
> 1. That person or organization is only an additional insured with respect to liability arising out of . . . "[y]our work" for that additional insured by or for you.
> 2. The Limits of Insurance applicable to the additional insured are those specified in the written contract or agreement or in the declarations for this policy, whichever is less. These limits of insurance are inclusive and not in addition to the limits of insurance shown in the declarations.
> . . .
> Any coverage provided hereunder shall be *excess* over any other valid and collectible insurance available to the additional insured whether primary, excess, contingent or on any other basis *unless a contract specifically requires that this insurance be primary* or you request that it apply on a primary basis.

4

Doc. #34, Exhibits I, L (emphasis added).

The starting point for interpreting any insurance contract is the plain language of the contract. *McDaniel v. Sierra Health and Life Ins. Co., Inc.*, 53 P.3d 904 (Nev. 2002). When an insurance policy contains clear and unequivocal provisions, those provisions shall be construed to their usual and ordinary meaning. *Dickenson v. Nevada*, 877 P.2d 1059, 1061 (Nev. 1994). Thereafter, using the plain language of the contract, the court shall effectuate the intent of the parties, which may be determined in light of the surrounding circumstances. *See 2 NGA #2 Ltd. Liab. Co. v. Rains*, 133 Nev. 1151, 1158 (1997); *see also, Burrows v. Progressive Casualty Ins.*, 820 P.2d 748, 749 (Nev. 1991). Additionally, insurance contracts are construed in favor of coverage. *See Federal Ins. Co. v. American Hardware Mut. Ins. Co.*, 184 P.3d 490 (2008).

Here, the plain language of the additional insured provision provides that coverage is to be excess unless there is a contract requiring coverage be primary. Defendants contend that the subcontract agreement with Century Roofing and VGC did not expressly require primary coverage.

In opposition, plaintiffs argues that the intent of the contracting parties (Windcrest, KMS, Century Roofing, and VGC) was for the additional insured provisions to provide primary coverage. The subcontract agreement states:

> INDEMNIFICATION - *to the fullest extent permitted by law*, the Subcontractor shall indemnify and hold harmless the General Contractor and/or the owner and the architect and their agents and employees from and against all claims, damages, losses, and expenses, including, but not limited to, attorney's fees arising out of or resulting from the performance of the Work, provided that any such claim, damage, loss or expense (1) is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property including the loss of use resulting therefrom, and (2) is caused in whole or in part by any negligent act or omission of the Subcontractor, any Sub-Subcontractor, anyone directly or indirectly employed by any of them, or anyone for whose actions any of them may be liable . . . .
> The insurance required by paragraph 24 shall include contractual liability insurance applicable to the subcontractor's obligations under paragraph 25 (Indemnification) . . . Insurance coverage must be provided in an acceptable format by insurance companies acceptable to the General contractor and/or the owner.
> . . . the subcontract shall name the general contractor, the owner and any other interested party as an additional named insured on all liability policies of the subcontractor throughout the project. The insurance policy shall be endorsed stating only the subcontractor will be responsible for the payment of any and all premiums.

5

Doc. #34, Exhibits A, B (emphasis added).

The court finds that the "to the fullest extent permitted by law" language provided in the broad indemnity provision specifically requires the additional insured endorsements provide primary coverage as a matter of law. The plain language of the subcontract agreement requires the additional insured endorsement to provide the most protection available under the law to the insured. The court finds that such protection is primary coverage because all other coverage, including excess coverage, is less than full protection. Further, Windcrest and KMS explained the indemnity provision to Century Roofing and VGC, and therefore, the subcontracting parties were on notice that coverage was to be primary. Therefore, the court finds that defendants' additional insured endorsements provide primary coverage as a matter of law. *See* Doc. #34, Exhibit I ("Any coverage provided here under shall be excess . . . *unless a contract specifically requires* that this insurance be primary . . . .") (emphasis added). Accordingly, the court shall deny defendants' motion as to defendants Valley Forge and Transcontinental.

**B. Imperial Iron**

Non-party Imperial Iron was also required by a subcontract agreement, in language parallel to the Century Roofing and VGC subcontract agreements, to obtain an additional insured endorsement through its insurer Continental Insurance Company ("Continental"). Defendant Continental likewise contends that its insurance policy only provided excess coverage to KMS and Windcrest and that the court should grant summary judgment in its favor. However, the moving party must make a showing that is "sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone*, 799 F.2d at 259. Moreover, the party seeking to enforce an insurance policy provision bears the burden of proving the existence of the provision. *United States Fidelity and Guaranty Co. v. Thomas Solvent Co.*, 683 F. Supp. 1139, 1171 (W.D. Mich. 1988); *see also*, *UNR Indus. v. Continental Ins. Co.,* 682 F. Supp. 1434, 1447 (N.D. Ill. 1988).

1   Here, the insurance policy between Continental and Imperial Iron has been lost and
2   Continental has not provided any evidence that the policy provides excess coverage. The only
3   evidence regarding the policy are letters authored by Continental which reference Continental's
4   defense obligation in this matter. *See* Doc. #64, Exhibit P; Exhibit Q. Therefore, the court finds that
5   Continental's policy did not provide excess coverage as a matter of law because it has failed in its
6   burden to establish the existence of the requisite policy provisions. *See Thomas Solvent Co.*, 683 F.
7   Supp. at 1171. Accordingly, defendants' motion for summary judgment shall be denied as to
8   defendant Continental.

9   **IV.   Plaintiffs' Motion for Summary Judgment**

10   In their counter-motion for summary judgment, plaintiffs move this court for an order that
11   the additional insured provisions in the subcontractors' insurance policies provided primary
12   coverage. Specifically, plaintiffs argue that the intent of the parties entering into the subcontractor
13   agreements was to provide Windcrest and KMS indemnity to the fullest extent provided by law.

14   **A. Century Roofing and VGC**

15   As part of the subcontractor agreements, Century Roofing and VGC obtained additional
16   insured endorsements for Windcrest and KMS. Doc. #34, Exhibits I, L. The plain language of the
17   endorsement states that the insurance coverage is to be excess unless the subcontract agreement
18   specifically require the insurance to be primary. *Id*. Here, the court finds as a matter of law that the
19   subcontract agreements required the additional insured endorsement provide primary coverage
20   because that is the fullest extend permitted under the law. *See* Doc. #34, Exhibits A, B.

21   Additionally, the undisputed evidence establishes that plaintiffs' provided coverage to
22   Windcrest and KMS during the underlying construction defect action and solely contributed to the
23   underlying settlement. Further, it is undisputed that defendants had a duty to defend Windcrest and
24   KMS and contribute to any eventual settlement unless their additional insured provisions provided
25   excess coverage to Windcrest and KMS. Because the court finds that the additional insured

26

7

1 provisions provided primary coverage to Windcrest and KMS, plaintiffs' motion for summary
2 judgment shall be granted as to Valley Forge and Transcontinental's duty to defend and contribute
3 to the settlement.

**B. Imperial Iron**

Plaintiffs also claim a right of reimbursement for the Admiral's Point settlement under non-party Imperial Iron's Continental insurance policy. Generally, the party seeking insurance coverage or enforcement of an insurance policy provision bears the burden of proving the existence of the policy as well as all material terms. *United States Fidelity and Guaranty Co.*, 683 F. Supp. at 1171; *UNR Indus.,* 682 F. Supp. at 1447.

Here, the court finds that plaintiffs have established Continental's defense obligation by providing Continental's letters identifying and discussing its defense obligation. *See* Doc. #64, Exhibit P; Exhibit Q. Further, the evidence before the court establishes that Imperial Iron was party to a subcontract agreement which required an additional insured provision providing protection to the fullest extent permitted by law exactly like the subcontract agreements of VGC and Century Roofing. Doc. #34, Exhibit C. Therefore, the court finds that Continental's additional insured provision provided primary coverage to Windcrest and KMS and that Continental had a duty to defend and contribute to the settlement. Accordingly, plaintiffs' motion for summary judgment shall be granted as to defendant Continental.

\\\
\\\
\\\
\\\
\\\
\\\
\\\

IT IS THEREFORE ORDERED that defendants' motion for summary judgment (Doc. #40) is DENIED.

IT IS FURTHER ORDERED that plaintiffs' cross-motion for summary judgment (Doc. #41) is GRANTED.

IT IS FURTHER ORDERED that the clerk of court shall enter judgment accordingly.

IT IS SO ORDERED.

DATED this 13th day of August, 2010.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE